## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 09-61578-CIV-ZLOCH/ROSENBAUM

DAWN McMULLEN,

       Plaintiff,

v.

CHARTER SCHOOLS USA, INC.,

       Defendant.

_____/

### <u>ORDER</u>

This matter is before me upon Defendant Charter Schools USA, Inc.'s Motion to Take Deposition of United Healthcare [D.E. 69] and Defendant Charter Schools USA, Inc.'s Motion to Delay [D.E. 70], upon referral by the Honorable William J. Zloch. *See* D.E. 74. The Court has reviewed the pending Motions, all filings in support thereof and in opposition thereto, and the record in this case and, for the reasons that follow, now denies Defendant's Motions.

### *I.  Background*

#### <u>A.  The Underlying Facts</u>

This matter arises out of Defendant Charter Schools USA, Inc.'s ("Defendant" or "CSUSA") termination of Plaintiff Dawn McMullen ("Plaintiff" or "McMullen") from her position with the company at the North Broward Academy of Excellence School ("North Broward"). According to the Complaint, McMullen began her employment with CSUSA in 2003, when CSUSA hired her to work as a teacher of gifted students at another school operated by CSUSA. D.E. 1 at 2-3, n.1 and ¶ 9. In August 2008, the Complaint asserts, McMullen became a media tech at North Broward,

although CSUSA asked her subsequently to substitute temporarily for a fifth-grade teacher who had become ill.  *Id.* at ¶ 9.

The Complaint further alleges that in about October 2008, McMullen began experiencing a "serious health condition" that rendered her unable to perform her duties on a short-term basis.  *Id.* at ¶ 10.  As a result of these circumstances, McMullen requested and received short-term disability payments through CSUSA's insurance coverage for employees.  *Id.* at ¶¶ 10-11.  Under these arrangements, the Complaint continues, McMullen was approved for disability payments and leave through January 18, 2009.  *Id.* at ¶ 11.  In this regard, the Complaint alleges that CSUSA had "complete knowledge" that McMullen had received at least one short-term disability check through the insurance program.  *Id.*

The Complaint continues, averring that McMullen's treating physician, Dr. Eduardo J. Hidalgo, M.D., "informed CSUSA that McMullen's return to work would be January 19, 2009." *Id.* at ¶ 12.  On January 7, 2009, however, CSUSA terminated McMullen's employment, citing unsatisfactory attendance and performance.  *Id.* at 4, n.3 & ¶¶ 13-14.

## B.  The Procedural History

Following her termination, on October 2, 2009, McMullen brought this action against CSUSA for retaliation in violation of 29 U.S.C. § 1140, Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA").  *See id.* at Count I.  McMullen claims that, in actuality, CSUSA fired her in at least motivating part, for seeking and obtaining short-term disability benefits and to prevent her from obtaining future disability benefits.  *Id.*

Although the Summons Return in this case indicates that CSUSA was served with the Complaint and Summons on October 6, 2009, *see* D.E. 5, CSUSA did not timely respond to the

Complaint, despite Plaintiff's agreement to a 20-day extension of time for CSUSA to respond. *See* D.E. 15 at Ex. C. Consequently, McMullen sought and obtained a Clerk's Entry of Default against CSUSA on November 20, 2009. *See* D.E. 6 and D.E. 7.

A little bit more than two weeks later, on December 8, 2009, current counsel for CSUSA entered her appearance. *Id.* at D.E. 8. Thereafter, CSUSA filed its unopposed Motion to Set Aside Default, which the Court granted on December 18, 2009, setting the time for CSUSA to respond to the Complaint for December 29, 2009. *See* D.E. 10, D.E. 11.

Due to weather conditions and other circumstances, CSUSA did not file its Motion to Dismiss until January 4, 2010. *See* D.E. 14. Although the Court noted that it would have been "more prudent" for CSUSA to have filed a motion for extension of time within which to file its response to the Complaint, under the circumstances set forth by CSUSA, the Court allowed the untimely filing to proceed and considered and denied the Motion to Dismiss on its merits, ultimately. *See* D.E. 35, D.E. 37.

As a result, Defendant's response to the Complaint became due by July 3, 2010. *See* Fed. R. Civ. P. 12(a)(4)(A). When CSUSA failed to file a response, McMullen filed another Motion for Entry of Default [D.E. 40], this time on July 7, 2010. A week later, on July 14, 2010, CSUSA finally filed its Answer and Affirmative Defenses [D.E. 49]. McMullen withdrew her Motion for Entry of Default. *See* D.E. 50.

In the meantime, on January 12, 2010, the Court had entered a Scheduling Order setting the matter for a pre-trial conference on October 8, 2010. *See* D.E. 18 at 1. Among other deadlines, the Scheduling Order required all discovery to be completed by twenty days prior to the pre-trial conference, or September 18, 2010. *See id.*

-3-

During the course of discovery, CSUSA served a subpoena on United Healthcare of Florida ("United"), the company providing McMullen's disability insurance benefits, seeking all records relating to Plaintiff. *See* D.E. 69-1 at 2. The subpoena set January 29, 2010, as the production date. *Id.* United responded by letter on February 2, 2010, stating that it had searched but had found no records pertaining to McMullen. *See* D.E. 69-2.

In response to the February 2, 2010, letter, CSUSA provided United with documents showing that McMullen had received benefits from United and again attempted to obtain the subpoenaed documents. *See* D.E. 69 at ¶ 3. By letter dated April 12, 2010, United again denied the records request, this time because United concluded that the subpoena failed to comply with the privacy requirements of the Health Insurance Portability and Accountability Act ("HIPAA"). D.E. 69-3. In its letter, United explained that it would be "happy to comply with [CSUSA's] subpoena" once CSUSA satisfied HIPAA's requirements in one of the following three ways:

1. Secur[ing] an authorization in conformity with the HIPAA privacy regulations directly from [Plaintiff] for release of the requested protected health information; or

2. Secur[ing] a Court Order detailing your specific needs; or

3. Provid[ing] [United] with "satisfactory assurances" under HIPAA . . . .

*Id.* In response to the April 12, 2010, United letter, counsel for CSUSA claims that she verbally requested a HIPAA authorization form from counsel for McMullen, although counsel for McMullen denies receiving any such request. *See* D.E. 59 at ¶ 5; D.E. 72 at 4 n.1.

Instead, Plaintiff's counsel asserts, because CSUSA took no further action with respect to its subpoena to United, on July 9, 2010, Plaintiff independently served her own subpoena on United

for essentially the same documents that CSUSA had previously requested.  *See* D.E. 57-4.  When United responded by indicating once again that it had no records regarding McMullen, Plaintiff attempted to work with United to show otherwise.  *See* D.E. 55.  Receiving no response, on August 19, 2010, McMullen then filed a Motion to Compel production of the documents.[1]  *See id.*  Subsequently, the Court granted the Motion to Compel and ordered United to produce the subpoenaed records.  *See* D.E. 65.

In the midst of these proceedings, on August 6, 2010, McMullen filed her Motion for Summary Judgment [D.E. 51].  On September 1, 2010, CSUSA filed its Motion for Extension of Time, seeking additional time to respond to McMullen's Motion for Summary Judgment and to file its own motion for summary judgment.  *See* D.E. 56.  As a basis for these requests, CSUSA explained that it required documents from United in order to respond to McMullen's Motion for Summary Judgment and to support its own motion for summary judgment.  *See id.*  The Court granted CSUSA's Motion for Extension of Time in part, allowing CSUSA to file its response to McMullen's Motion for Summary Judgment by noon on September 10, 2010.  *See* D.E. 58.

Instead of filing a response, however, on September 10, 2010, at 4:47 p.m., CSUSA filed its Supplemental Motion for Extension of Time [D.E. 59], requesting a further extension of time until September 14, 2010, within which to file its response to McMullen's Motion for Summary Judgment, stating simply that CSUSA "requires additional time . . . to fully prepare the response."

---

[1]In other discovery proceedings, McMullen served her Third Set of Interrogatories on CSUSA on June 24, 2010.  *See* D.E. 54.  CSUSA failed to respond.  *See id.*  Consequently, on August 19, 2010, McMullen filed a Motion to Compel responses to the interrogatories.  *See id.*  When CSUSA did not respond to McMullen's Motion to Compel, either, the Court granted McMullen's Motion to Compel, noting that CSUSA's failure to respond to the Motion to Compel, in and of itself, provided grounds for granting the Motion.  *See* D.E. 64.

*See* D.E. 59 CM/ECF filing receipt.  The Court then ordered CSUSA to file its response to McMullen's Motion for Summary Judgment by noon on September 14, 2010.  *See* D.E. 60. Although CSUSA filed its response on September 14, 2010, it did so at 12:57 p.m.  *See* D.E. 61 CM/ECF filing receipt.  Although the filing was late, it still occurred four days prior to the close of discovery in this case.  *See* D.E. 18.

On September 24, 2010, the parties submitted their Pretrial Stipulation.  *See* D.E. 63.  More than two months later, on November 29, 2010, well after the discovery period had closed, CSUSA filed the pending motions:  (1) CSUSA's Motion for Leave to Depose United Healthcare for Purposes of Authenticating Documents and/or Clarifying Internal Procedures [D.E. 69] ("Motion for Leave") and (2) CSUSA's Motion to Delay the Court's Ruling on McMullen's Motion for Summary Judgment[2] [D.E. 70] ("Motion to Delay").  Underlying both of these Motions is CSUSA's contention that information from United "goes to the heart of Plaintiff's claim of a bad[-]faith termination for discriminatory reasons."  D.E. 70 at ¶ 6; *see also* D.E. 69 at ¶ 19.

CSUSA seeks to depose United for, among other purposes, authenticating the documents in question.[3]  *See* D.E. 69.  In addition, CSUSA requests that the Court wait to rule on McMullen's Motion for Summary Judgment until such time that United may be deposed and United's records may be authenticated.  *See* D.E. 70.  McMullen opposes both Motions, arguing that they are untimely

---

[2]This Motion is actually entitled, "Defendant's Motion for Leave to Depose United Healthcare for Purposes of Authenticating Documents and/or Clarifying Internal Procedures." *See* D.E. 70.  A review of the substance of the Motion, however, reveals that, unlike D.E. 69, it seeks for the Court to forestall its ruling on McMullen's Motion for Summary Judgment until CSUSA can depose United.

[3]On November 4, 2010, CSUSA asked Plaintiff whether she would stipulate to the authenticity of documents received from United.  *See* D.E. 69-8.  Plaintiff responded that she would not the following day.  *See id.*

and constitute efforts to circumvent this Court's prior order denying further extensions of time for CSUSA to respond to McMullen's Motion for Summary Judgment. *See* D.E. 72. In addition, McMullen complains that allowing CSUSA to depose United now – well after the close of discovery – and delaying the Court's ruling on McMullen's Motion for Summary Judgment would be unduly prejudicial to McMullen. *Id.*

CSUSA filed no reply brief supporting either pending Motion. On January 5, 2011, Judge Zloch referred the pending Motions to me. *See* D.E. 73, D.E. 74. They are now ripe for disposition.

## II.  Discussion

Defendant's pending Motions effectively and implicitly seek (1) to modify the Scheduling Order in this case to extend the discovery period so that CSUSA may depose United after the discovery period has already expired and (2) to obtain authorization to file a supplemental response to Plaintiff's Motion for Summary Judgment more than six weeks after Defendant's original response was due. The Court considers the appropriateness of permitting such relief under the circumstances of this case.

A district court has both the power and responsibility "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)) (quotation marks omitted).[4] Indeed, the Eleventh Circuit's predecessor court explained,

> Managerial power is not merely desirable. It is a critical necessity.
> The demands upon the federal courts are at least heavy, at most

---

[4]Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

> crushing.   Actions are ever more complex, the number of cases
> greater, and in the federal system we are legislatively given new areas
> of responsibility almost annually.   Our trial and appellate judges are
> under growing pressure from the public, the bar, the Congress and
> from this court to work more expeditiously.   In most instances these
> pressures reflect fully justified societal demands.   But court resources
> and capacities are finite.

*Id.*   As a result, the Eleventh Circuit has observed, "In the courts, there is room for only so much lenity.   The district court must consider the equities not only to [defendant] and [its] counsel, but also to the opposing parties and counsel, as well as to the public, including those persons affected by the court's increasingly crowded docket."   *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004).

Among the tools that district courts employ in managing their caseloads is the scheduling order required by Rule 16(b), Fed. R. Civ. P.   In relevant part, the scheduling order limits the time to complete discovery.   *See* Fed. R. Civ. P. 16(b)(3)(A).   Under Rule 16(b)(4), Fed. R. Civ. P., "A schedule may be modified only for good cause and with the judge's consent."   "'Good cause' . . . generally signifies a sound basis or legitimate need to take judicial action."   *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987).

In this case, CSUSA has demonstrated no such basis or need.   The Scheduling Order set forth a deadline of September 18, 2010, by which all discovery was to have been completed.   *See* D.E. 18.   Although CSUSA does not use the term "good cause" in justifying its request to seek discovery out of time, the Court construes CSUSA's Motion for Leave to assert that good cause for allowing the requested discovery exists in view of the fact that CSUSA did not receive documents from United until after October 26, 2010, the date that the Court set as a deadline for United to produce documents responsive to McMullen's subpoena to United.   Because October 26, 2010, post-dated

the discovery cut-off by a few weeks, the Court understands CSUSA's argument to be, CSUSA should receive additional time to depose United.

There are several problems with CSUSA's position.  First, CSUSA did nothing within the discovery period to attempt to obtain the documents from United after United declined to provide them to CSUSA in response to CSUSA's subpoena.  Even assuming for purposes of this Order that counsel for McMullen refused to provide a HIPAA authorization form to CSUSA so that CSUSA could obtain documents directly from United, Plaintiff did not independently subpoena United until July 9, 2010, nearly three months after the date of the letter from United to CSUSA refusing to produce responsive documents in the absence of HIPAA compliance.  During this nearly three-month period and even after Plaintiff served her own subpoena on United, CSUSA took no further steps whatsoever to obtain the records from United; CSUSA did not move to compel United's compliance, seek an order from this Court requiring Plaintiff to provide a HIPAA authorization form, attempt to satisfy United's HIPAA-related concerns in some other way, or otherwise try to obtain the documents from United.  Instead, in the remaining five months of the discovery period following United's April 12, 2010, letter, CSUSA did nothing.

Second, CSUSA's lack of initiative with regard to procuring the United records did not occur in a vacuum.  The docket in this matter reflects a pattern of apparent nonchalance with regard to deadlines established by the Federal Rules of Civil Procedure, the Local Rules of the Southern District of Florida, and this Court.  CSUSA has failed to meet all of the following deadlines in this case without receiving prior Court authorization: (1) November 16, 2009: the first deadline for CSUSA's response to the Complaint (after Plaintiff agreed to a twenty-day extension from the original October 27, 2009, deadline); (2) December 29, 2009: the Court-imposed deadline for

-9-

CSUSA to file its response to the Complaint after the Court vacated the Clerk's default; (3) July 3, 2010: the deadline for CSUSA's response to the Complaint after the Court denied CSUSA's Motion to Dismiss; (4) July 27, 2010: the deadline for CSUSA to respond to Plaintiff's Third Set of Interrogatories; (5) August 30, 2010: the original deadline for CSUSA to respond to Plaintiff's Motion for Summary Judgment; (6) September 3, 2010: the deadline for CSUSA to respond to Plaintiff's Motion to Compel; (7) September 10, 2010, 12:00 p.m.: the first Court-extended deadline for CSUSA to respond to Plaintiff's Motion for Summary Judgment; and (8) September 14, 2010, 12:00 p.m.: the second Court-extended deadline for CSUSA to respond to Plaintiff's Motion for Summary Judgment.  The Court cannot continue ignore this pattern of practice.  "Deadlines are not meant to be aspirational; counsel must not treat the goodwill of the court as a sign that, as long as counsel tries to act, [she] has carte blanche permission to perform when [she] desires." *Young*, 358 F.3d at 864.

Third, CSUSA has known since August 6, 2010, when Plaintiff filed her Motion for Summary Judgment, what materials it would need to respond to Plaintiff's Motion for Summary Judgment.  Despite this knowledge, CSUSA engaged in no steps to procure the information from United, instead choosing to allow the discovery deadline to expire and to rely solely on Plaintiff's efforts to obtain documents from United.  Having made this decision, CSUSA must now live with it.

Finally, while CSUSA may benefit from the additional requested discovery, it does not appear to this Court that the information CSUSA has described as desiring to obtain from United should provide the only source of evidence showing that CSUSA did not know of Plaintiff's planned return-to-work date when CSUSA terminated Plaintiff's employment, if, in fact, that is what

occurred.  In short, CSUSA has not demonstrated good cause justifying the re-opening of the discovery period.

As for CSUSA's Motion to Delay, the Court's ruling denying CSUSA's Motion for Leave appears to render moot CSUSA's Motion to Delay since the Motion to Delay seeks for the Court to wait to rule upon Plaintiff's Motion for Summary Judgment until CSUSA obtains information pursuant to its Motion for Leave – an event that will not occur.  Nevertheless, construing CSUSA's Motion to Delay broadly to seek authorization generally to file a supplemental response to Plaintiff's Motion for Summary Judgment, the Court considers CSUSA's request.

Where, as here, the deadline for filing a response has already passed as of the time of a party's motion seeking authorization to file the response out of time, Rule 6(b)(1)(B), Fed. R. Civ. P., sets forth the standard that governs.  Under Rule 6(b)(1)(B), a court may extend the filing period "if the party [previously] failed to act because of excusable neglect."  The Supreme Court has set forth factors for a court to evaluate when determining whether a party satisfies the excusable neglect standard: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, "including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  *See Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) (expounding upon the phrase as it appears in the context of Rule 9006(b)(1), Fed. R. Bankr. P.).

Above, the Court has already discussed the considerations set forth by the third factor and has concluded that it weighs against CSUSA here.  As for the length of the delay and its potential impact on judicial proceedings, it is significant.  First, the Court set a nine-month discovery period in this case.  When CSUSA sought authorization to file a supplemental response to Plaintiff's

Motion for Summary Judgment sometime in the yet-undetermined future, it did so two-and-one-half months after the discovery period closed. Second and similarly, two-and-one-half months elapsed after CSUSA's response to Plaintiff's Motion for Summary Judgment was due and before CSUSA sought to file its supplemental response. Third, the parties had already submitted their Pretrial Stipulation more than two months before CSUSA's request to file a supplemental response and after CSUSA had filed its response to Plaintiff's Motion for Summary Judgment. Fourth, as of the time that CSUSA sought authorization to file a supplemental response, the Court had already advised the parties to be ready to proceed to trial upon the Court's ruling on Plaintiff's Motion for Summary Judgment. This factor, like the third *Pioneer* factor, also weighs against CSUSA.

Turning to the first *Pioneer* factor, allowing the supplemental filing at this late time would prejudice Plaintiff. Plaintiff has already filed her Reply in response to CSUSA's opposition to Plaintiff's Motion for Summary Judgment. *See* D.E. 62. In addition, she and CSUSA have prepared and filed the Joint Pretrial Stipulation. *See* D.E. 63. Moreover, although, ultimately, Plaintiff's actions were responsible for obtaining the United records, she, like CSUSA, did not have the chance to use the records produced on October 26, 2010, in furtherance of her Motion for Summary Judgment, and permitting her the opportunity to file a new motion for summary judgment now would unfairly impose additional expense upon Plaintiff. Consequently, the prejudice factor also weighs against CSUSA.

Finally, with regard to good faith, the Court does not have reason to believe that CSUSA did not act in good faith in seeking to file the supplemental response to Plaintiff's Motion for Summary Judgment. But that alone cannot overcome the heavy weight of the other three *Pioneer* factors. Consequently, the Court does not find excusable neglect warranting the out-of-time filing of a

supplemental response to Plaintiff's Motion for Summary Judgment and therefore denies CSUSA's

Motion to Delay.

### *III.  Conclusion*

For the foregoing reasons, Defendant Charter Schools USA, Inc.'s Motion to Take

Deposition of United Healthcare [D.E. 69] and Defendant Charter Schools USA, Inc.'s Motion to

Delay [D.E. 70] are **DENIED**.

**DONE AND ORDERED** this 7th day of January 2011.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. William J. Zloch
      Counsel of Record